THORNTON CHECK *v.* LITTLE MIAMI R. R. Co.

(No. 5,954.)

1. Where a party contracts for transportation over a route composed of several railroads, for which he pays an entire sum, and receives a through-ticket or receipt, the contract is entire, and not of several distinct liabilities. If no partnership in fact exists between the roads, he may treat the contract as entire, or several, so far as the other parties are concerned.

2. By the appointment of a common agent to receive the entire consideration, and issue through-tickets and checks, which they recognize and assume, the several companies are made aware that the contract is treated by the passenger as entire, and not several.

3. If the agent at the starting point fails to disclose his principals, and contracts on their behalf, whether jointly or severally, he, or the company represented by him, may be treated as sole principal; but if the contract be, in fact, entire, and he is, in fact, dealing for others, who receive the benefits of the contract, the other contracting party may look to the real principals, and subject all who are interested in the joint contract.

4. The delivery of a check to a passenger, is intended to relieve him of any care or superintendence of his baggage, while on its journey, and devolves such care upon the agents of the several roads over which it passes.

SPECIAL TERM.—Action to recover the value of lost baggage.

The petition sets forth that the defendant entered into a contract of partnership with the Columbus and Xenia Railroad Company, the Central Ohio Railroad Company, the Baltimore and Ohio Railroad Company and the Washington Branch Railroad Company, by which they formed a *running* connection over their respective roads, for the transportation of passengers, with their baggage, from Washington city to the city of Cincinnati, for reward, and that during said partnership, viz: on the 29th of December, 1856, the defendant, at Washington city, *by its agent* contracted with the plaintiff, for the consideration of $16, then paid by plaintiff to said agent, to transport the plaintiff and baggage safely, and in a reasonable time, to the city of Cincinnati, over said several roads; by virtue of which contract, the plaintiff took passage on the cars of the Washington Branch Road, at Washington city, and delivered to the proper agent of said Washington Branch Road, his baggage, consisting of a large trunk, containing his wearing apparel, of the value of $203 75, and $95 in money, being for necessary traveling expenses; that said agent gave to plaintiff a through-check for his baggage from Washington city to Cincinnati; that plaintiff was, in a reasonable time, safely carried over the entire distance, and, upon his arrival in Cincinnati, demanded his baggage from defendant; that said baggage was not delivered to him, nor safely carried over said roads, but, on the contrary, a portion thereof, consisting of said sum of money, and wearing apparel, to the value of $150 75, (in all, $246 75), was wholly lost through the carelessness and negligence of the defendant, and were never delivered to the plaintiff, and the residue thereof, though delivered by the defendant to the plaintiff, was delayed

Thornton Check *v.* The Little Miami R. R. Co.

unreasonably, for the space of fourteen days, by reason of which delay he has sustained damage in the sum of $150, and for which, together with the value of the property lost, he claims damages, amounting, in all, to $396 75.

For answer the defendant comes and denies the existence of any contract of partnership between defendant and said other railroad companies, as averred in said petition; and denies that said trunk was delivered to said defendant, or to any agent of theirs authorized to contract in their behalf, as alleged in the petition.

On the trial, the plaintiff offered in evidence his own deposition, from which it appears that on the day named in the petition, the plaintiff engaged passage at the ticket office of the Washington Branch Railroad, in Washington city, from thence to Cincinnati, over the several roads named in the petition; paid a clerk in the office $16, for the entire passage money, and received a *through-ticket* for his own passage, and a check for his baggage, for the *entire route*, of which a duplicate was placed on his trunk; that he placed the trunk, thus checked, in the hands of the baggage master for the line, at Washington; that it was properly fastened, and contained the articles specified in the petition; that upon the same day the plaintiff started upon the cars at Washington, and reached Cincinnati on the second day following; that his *ticket* and check were recognized by the several agents of the roads over which he traveled, including that of defendant, as entitling him to pass over. That on his arrival in Cincinnati he demanded his trunk at defendant's depot; that the same could not be found; that at the end of fourteen days it was found at defendant's depot. That when thus found it was recognized by defendant's agent, as plaintiff's, by the counter-check in plaintiff's possession. That the trunk had been broken open, and the property, claimed by the plaintiff to be lost, had been taken out of it. That the agent of the defendant acknowledged the trunk had been broken open, but stated that such was its condition when it arrived at the depot. The plaintiff at first refused to receive what re-

mained of his property, unless remuneration was made him for his damage—but finally took it. That the amount of property lost was as stated in the petition, and that by reason of being obliged to wait for his baggage, plaintiff was unable to proceed immediately upon his journey, and lost thereby opportunity for employment, for the space of six weeks, upon the steamer Hickman, on which he had been engaged in his regular business, at $40 per month, and for which he claims to have sustained special damage, to the amount of $150.

This was all the testimony offered in the case.

*W. B. Probasco*, for plaintiff.

*Curwen & Wright*, for defendant.

Spencer, J.   The plaintiff claims to recover, upon either of two grounds: 1st. That whatever relation the defendant might have sustained to the Washington Branch, and intermediate railroads, *inter se*, yet as to the world, they held themselves out as partners, and the plaintiff has therefore a right to charge them as such, and to hold each liable for the acts of either, or all.   2d. That independent of partnership, the trunk being found in possession of defendant in a mutilated condition, throws upon them the burden of showing that the loss did not happen while the trunk was in their possession as carriers.

The facts relied upon as going to show a partnership, are : the employment of a *common agent* at Washington city, to receive through-fare for the entire route, and for each of the roads; the receipt of such fare and the delivery of a *single ticket*, and a *single check* for the entire route; and the acknowledgment of the sufficiency of such ticket and check, by the several agents of all the companies throughout the route, and to the end of the journey.

How far these facts, in conjunction with the known customs and usages of railroads, are to be regarded as holding

out to the world, an idea of special or limited partnership, as between such roads, and persons dealing with them, has been to me a question of no little embarrassment; and especially so, as the number of authorities upon the subject are exceedingly limited, and of a contradictory character.

In the case of *Ellsworth* v. *Tartt*, 26 Ala. 733, the defendant owned a line of stages, or a continuous and connected passenger line, from Montgomery, in Alabama, to Charleston, in South Carolina, connecting with another line of stages at one end, and with a railroad at the other. The plaintiff took passage from Montgomery to Charleston; paid his fare for the entire distance, and received a through-ticket at Montgomery. He passed, with his baggage, safely over the railroad, and over defendant's line, and while upon the connecting lines of stages, owned by other parties, discovered his trunk was missing. The defendant acknowledged himself proprietor of his own line, took a memorandum of the lost articles, and promised to assist in finding them. The money received for passage was to be paid over to the different lines, in certain agreed amounts. Upon the trial below, the judge charged the jury that if the passage money was paid over to a common agent, and was to be shared by all the parties, they were liable to the world as partners, and the defendant, as one of the firm, was amenable to the plaintiff's action. It was held on error that the charge was erroneous, that although the plaintiff had purchased a *through-ticket*, and defendant was to receive part of the price paid for it, under a contract for that purpose with the other parties, as to his portion of the route, that did not render him liable as a partner, so as to subject him to a loss not occurring upon his portion of the route. The court say (page 736), "The liability of the defendant as a partner, was by the charge to depend solely upon the fact of his having the right to receive a portion of the money paid for the *through-ticket*. Suppose the different proprietors along the route came to the understanding to appoint a common agent at each end, to receive the fare of each, from passengers going through, and to give

16

a receipt or through-ticket, it is very clear that such an agreement would not constitute a partnership *inter se*, or as to *third persons*, and yet each proprietor would have the right to receive his proportion of the fare; there would be in such case no community of interest, either in the property or the profits."

This decision was undoubtedly correct, in so far as it reversed the decision of the court below. The court below had held it conclusive proof of a partnership, that the defendant had received a portion of the money paid for a through-ticket, without considering the question of a *community of profits*, or of joint interest in the property, or a joint *undertaking to carry*. But so far as the court of errors undertook to negative the idea of partnership, on the ground that there appeared to be no community of interest between the parties, either in the *property*, or in the *profits*, it seems to me the court went entirely too far. A continuous line, and the undertaking of each to forward passengers, who had been carried over the route of another, might have made the routes of all more profitable, by inducing increased travel, and thus give such an interest in the purpose of the undertaking of all.

In the case of *Hart* v. *Rensselaer and Saratoga R. R. Co.*, 4 Selden, 37, the plaintiff purchased, at Whitehall, from an agent, through passenger tickets from thence to Troy. Part of the line was covered by the defendant's road—part by the road of another company, and part by the Washington and Saratoga Railroad—and put his baggage, consisting of four trunks, on board the cars, at Whitehall. Both passenger and baggage cars ran all the way through. Two of the trunks arrived safely at Troy, the other two were lost. Such was the plaintiff's proof, and on motion for a non-suit, the court below refused it. The defendant then offered evidence that there was an agreement between the three companies, by which the defendant ran its engine between Troy and Saratoga; and the Saratoga and Washington Railroad Company, its engine between Saratoga and Whitehall.

That each ran cars over the whole distance, accounting to the three for their proper proportion of the distance run. That for the accommodation of passengers, tickets were sold in three parts—Troy to Balston, Balston to Saratoga, Saratoga to Whitehall. The court charged the jury, "that it was not a question whether the property was on the defendant's road, but whether it was received by the defendant's agents, at Whitehall or elsewhere;" upon which plaintiff obtained a verdict. On a writ of error, complaint was made, that the court below refused to non-suit the plaintiff, as requested, and that the charge of the court below was erroneous. The court above intimate that when the plaintiff closed his case, the evidence of the defendant's liability was *slight*—hardly sufficient to warrant a verdict. But this point it was unnecessary to decide; for upon the further evidence given by defendant, the verdict was clearly right, and no fault was to be found with the charge; for it appeared, further, in evidence by a witness, that he was baggage man in the employment of defendant—had charge of the baggage car from Whitehall to Troy, which belonged to the defendant, and in which, part of the defendant's baggage was carried from Whitehall to Troy; that he once went into the other baggage cars, which the agents of the Whitehall road had filled up with emigrant's baggage (to which class plaintiff belonged); that on his arrival at Saratoga, he neglected assorting the baggage to be sent to Schenectady, from that to be sent to Troy, out of the freight car which came to Troy; and that *through*-tickets were sometimes sold to *emigrants.*

The ground upon which this decision rests, is not distinctly stated by the court—whether because the evidence showed a joint interest between the several roads, as partners; or whether it showed that the trunks were, from the beginning, considered as under the charge of the defendant's agent.

In a manuscript case, decided at general term of the supreme court of Buffalo, *Morris* v. *The Michigan Southern R. R. Co.,* the case of *Hart* v. *The Rensselaer & Saratoga R. R. Co.,* was held as conclusively deciding that payment

to a common agent of the passenger money for the entire line, accompanied by a through-ticket, constituted the several companies of which the line was composed, partners, as between themselves and the parties making such payment. In this case the defendant was the connecting link between the Northern Indiana Railroad, and the Erie & Kalamazoo Railroad, the three forming a continuous line from Chicago to Toledo.   They had agents at each end of the line, who received through-fare, and gave tickets and bills accordingly, and the money was divided among the roads, according to the distance traveled by each.   The plaintiff put his cattle on board the cars at Chicago, destined for Toledo, which were damaged before they reached defendant's road.   He also put some hogs on the cars at Chicago, for Toledo, which were damaged after they left the defendant's road.   For the latter there was no waybill, or memorandum of transportation, nor any special contract, other than what was implied from payment of the price of transportation for the whole distance.   For the cattle there was a waybill, signed by the transportation agent at Chicago, as follows:

"NORTHERN INDIANA RAILROAD Co., JAN. 7, 1853.

" Waybill of Merchandise forwarded from Chicago to Toledo:

| No. of Car. | To whom consigned. | Description. | Charges. |
|---|---|---|---|
| 603, 141, 134, 127, 129, 140, &c. | John Morris, Toledo. | 123 head of cattle, 11½. Cars, @ $25. | $287 50. |

"L. DARLING, Agent,
" per D. W. Matthews."

These facts the court held, under the decision of the case alluded to, were sufficient to establish a joint liability on the part of the defendant, with the other railroads, as *partners.* It is true the court also held, that such contract of partner-

ship was not within the scope of the defendant's authority, under its charter, and was, therefore, void.

Upon this latter question, however, I need not dwell, since we have decided, in general term, in two cases, that a railroad company might make a binding contract of transportations beyond its *own terminus.*

The real question to be determined in this, and cases of a like kind, is, with whom has the plaintiff made his contract. When a party contracts with an agent for transportation over an *entire* line, for which he pays an entire price, and receives one *through-receipt,* does he understand that he is making payment for an *entire* consideration, or for several distinct considerations to be received? and do the parties with whom he deals, hold themselves out as dealing *severally,* or as uniting in a common purpose for an entire consideration? The answer to these questions, it seems to me, must determine the question of liability. Now, it is evident, that so far as the plaintiff is concerned, he must have considered the contract of transportation as entire, either as made with the company at the starting point of the line, or as made with all the parties composing the line—he considered the contract as a *unit,* and not made up of several distinct agreements with several distinct parties. The evidence which he receives from the other contracting party is of *an entire* engagement, and not of several distinct liabilities; the price he pays is an *entire* sum, and he makes no inquiry into the consideration to be received by each company individually; his baggage is checked through the entire distance, to be delivered in safety at his journey's end, and is not to be delivered to or inquired for by him at any intermediate point. If his ticket should be refused at any intermediate point, he does not expect a return back of the consideration received for that particular part of the route. He considers the whole contract broken, and that he is entitled to a return of the price for the whole journey unperformed, and in this case he does not expect to call upon each company severally for its proportion of the consideration received—for that cor-

poration he does not know—he expects to be reimbursed in an entire sum.   It follows then, that so far as he is concerned, he treats the contract as entire, and not merely several.   If no partnership in fact exists between the roads, he may, undoubtedly, treat the contract as entire, or several, so far as the other parties are concerned.

By the appointment of a common agent, to receive the entire consideration, who issues through-tickets and checks, which they recognize, and assume, they are made aware of the expectations of parties dealing with the agent, and must, therefore, know the contract is treated as entire, and not several.   With whom, then, if entire, is the contract made ? Undoubtedly, if the agent of the company at the starting point fails to disclose his principals, and contracts on their behalf, whether jointly or severally, he, or the company represented by him, may be treated as *sole principal*, and held liable accordingly.   But if the contract made by him be entire, and he is, in fact, dealing for others, who receive the benefits of the contract, the other contracting party may look to the real principals, and subject all who are interested in the joint contract.   In this view of the case, I am of opinion that this contract of transportation may be property considered as *joint* between all the roads participating in its benefits, and that the defendants are liable accordingly ; an opinion in all respects confirmed by Judge Redfield in his treatise on railways.

Assuming, however, that the facts above referred to, fail to establish a *joint* liability between the several parties forming the line, and still it seems to me the case is in favor of the plaintiff.

It is proof that the trunk containing the plaintiff's baggage, was delivered in good order upon the cars at Washington city, with a through-check fastened upon it ; that the check was recognized by the defendant as authorizing them to carry the trunk through and deliver it to plaintiff ; that the trunk came into the hands of defendant, and was transported over its line of road ; that when it reached the

end of the line it had been broken open, and in part rifled of its contents. The delivery of the check to the plaintiff was intended to relieve him from any care or superintendence of the trunk while on its journey, and devolved such care upon the agents of the several roads over which it passed. It is found in the defendant's hands broken open and rifled. The defendant gives no account of the condition in which it was received by it, though it acknowledges that it was apparent the trunk had been broken open. The nature of the case renders it difficult, if not impossible, on the part of the plaintiff, to show where the loss did happen, whether before or after the trunk came into defendant's possession. In this state of the case, it seems to me, that the burden of proof ought to rest with the defendant, and that we are justified in holding, that as the trunk started on its journey in a sound condition, it so continued, until it was found to be injured, and that the party in whose possession it was first found to be injured should render account for such injury, or show that it happened elsewhere; and in default of such account should answer for the loss.

I have examined the matters in controversy at considerable length, because they present important practical questions, and when persons are traveling over long routes, operated by several different companies, acting in concert, they ought to be made to understand with whom they are contracting and to whom they are to look for remuneration in case of loss.

As to the amount of recovery, the quantity and value of plaintiff's wearing apparel, with which he was traveling, was not unreasonable in amount, nor the money taken by him for reasonable traveling expenses. But as to the charge occasioned by not receiving his baggage in due season, it is not the subject of remuneration. It is not set forth specially in the petition, nor was it the necessary or direct result of the failure to deliver the plaintiff's trunk.

I shall, therefore, cause judgment to be entered up for plaintiff, for the value of the wearing apparel and money

lost, amounting to $246.75, with interest from the time of suit brought.

Judgment for plaintiff.